2024R00880/NKP/HH

**FILED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DEC 10 2024

AT 8:30 12:52 PM
CLERK, U.S. DISTRICT COURT - DNJ

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| | : | Crim. No. 24-802 (ESK) |
| v. | : | |
| | : | |
| | : | 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) |
| LARRY PETTIS | : | 18 U.S.C. § 2 |
| | : | |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

### COUNTS 1-3
### (Unlawful Distribution of Controlled Substances)

1. Unless otherwise indicated, at all times relevant to this Indictment:

**The Defendant and Relevant Individuals**

a. Defendant LARRY PETTIS ("PETTIS") was a resident of New Jersey and was a medical doctor licensed by the State of New Jersey.

b. PETTIS maintained a U.S. Drug Enforcement Administration ("DEA") registration number in New Jersey, which allowed him to issue prescriptions for Schedule II through Schedule V controlled substances so long as they were for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.

c. PETTIS owned a medical practice that had multiple locations in New Jersey that purported to provide pain management and other services.

      d.    Individual 1, a person not charged in this Indictment, was one of PETTIS's medical assistants. Individual 1 did not maintain a DEA registration number in New Jersey or in any other state and was not allowed to issue prescriptions for controlled substances.

      e.    Patient A was a patient of PETTIS.

**The Controlled Substances Act**

      f.    The Controlled Substances Act ("CSA"), codified in Title 21 of the United States Code, and its promulgating regulations, classified drugs into five schedules depending on a drug's acceptable medical use and its potential for abuse and dependency.

      g.    Schedule I controlled substances, such as heroin, did not have an acceptable medical use, while Schedule II through Schedule V controlled substances did.

      h.    Schedule II controlled substances, such as oxycodone, methadone, morphine, amphetamine, and branded drugs containing the same, had a high potential for abuse, and abuse of such a drug or other substance could lead to severe psychological or physical dependence.

      i.    Schedule III controlled substances, such as buprenorphine, and branded drugs containing the same, had potential for abuse, and abuse of such a drug or other substance could lead to moderate or low physical dependence or high psychological dependence.

      j.    Schedule IV controlled substances, such as alprazolam, clonazepam, lorazepam, and branded drugs containing the same, had a low

potential for abuse, and abuse of such a drug or other substance could lead to limited physical or psychological dependence.

k.   The CSA authorized Schedule II through Schedule V controlled substances to be dispensed to individuals by a valid prescription. 21 U.S.C. § 829.

l.   Title 21, Code of Federal Regulations, Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."

m.   Title 21, Code of Federal Regulations, Section 1306.04 further provided that "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

n.   Title 21, Code of Federal Regulations, Section 1306.05 further provided that "[a]ll prescriptions for controlled substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner."

o. The New Jersey Administrative Code established additional limitations for prescribing, administering, and dispensing controlled substances (described as "controlled dangerous substances" under state regulations). For example, long-term opioid prescriptions for chronic pain were subject to the following regulation:

> When controlled dangerous substances are continuously prescribed for management of chronic pain, the practitioner shall:
>
> [ . . .]
>
> Assess the patient prior to issuing each prescription to determine whether the patient is experiencing problems associated with physical and psychological dependence, and document the results of that assessment[.]

N.J. Admin. Code § 13:35-7.6(f)(2).

### Manner and Means

2. The manner and means by which PETTIS violated the CSA included, among other things, the following:

   a. PETTIS pre-signed prescriptions for controlled substances so that Individual 1 could issue the prescriptions to patients when PETTIS was out of the office.

   b. PETTIS directed Individual 1 to give pre-signed prescriptions for controlled substances to patients when PETTIS was out of the office.

   c. PETTIS caused prescriptions for controlled substances, including opioids such as oxycodone, to be issued to patients, even though PETTIS, prior to issuing each prescription, had failed to assess the patients to determine whether they were experiencing problems associated with physical

and psychological dependence.

        d.    PETTIS caused the medical records for patients who received prescriptions for controlled substances to be altered or fabricated.

3.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, the defendant,

**LARRY PETTIS,**

did knowingly and intentionally distribute and dispense, outside the usual course of professional practice and not for a legitimate medical purpose, mixtures and substances containing detectable amounts of Schedule II, III, and IV controlled substances, each of which constitutes a separate count of this Indictment, as follows:

| Count | Approximate Date of Distribution | Controlled Substances |
|---|---|---|
| 1 | April 17, 2024 | Oxycodone and others |
| 2 | May 7, 2024 | Oxycodone and others |
| 3 | May 14, 2024 | Oxycodone and others |

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT 4

### (Unlawful Distribution of Controlled Substances)

4. Paragraph 1 of this Indictment is realleged here.

### Manner and Means

5. The manner and means by which PETTIS violated the CSA included, among other things, the following:

   a. PETTIS issued prescriptions for controlled substances to Patient A without conducting a physical examination.

   b. PETTIS issued prescriptions for controlled substances to Patient A without discussing a treatment plan.

   c. PETTIS issued prescriptions for controlled substances to Patient A without discussing possible alternative treatments and the risks associated with the medication.

   d. PETTIS issued prescriptions for controlled substances to Patient A without assessing whether Patient A was experiencing problems associated with physical and psychological dependence.

   e. PETTIS issued prescriptions for controlled substances to Patient A when Patient A's drug test results raised red flags for substance abuse and drug diversion.

   f. PETTIS caused to be altered and fabricated Patient A's medical records.

6

g.   PETTIS issued to Patient A prescriptions for multiple central nervous system depressants, all of which were controlled substances, all at the same time.

6.   On or about August 12, 2024, in the District of New Jersey, and elsewhere, the defendant,

**LARRY PETTIS,**

did knowingly and intentionally distribute and dispense, outside the usual course of professional practice and not for a legitimate medical purpose, mixtures and substances containing detectable amounts of a Schedule II and Schedule IV controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

As a result of committing controlled substance offenses charged in Counts 1 through 4 of this Indictment, the defendant,

## LARRY PETTIS,

shall forfeit to the United States of America, pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in this Indictment.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A True Bill.

_____
Foreperson

_____
PHILIP R. SELLINGER
United States Attorney

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

THOMAS TYNAN
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

_____
NICHOLAS K. PEONE
HYUNGJOO HAN
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice

CASE NUMBER: _____

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

### UNITED STATES OF AMERICA

v.

### LARRY PETTIS

## INDICTMENT FOR

21 U.S.C. §§ 841(a)(1) and (b)(1)(C)
18 U.S.C § 2

A true bill.

Foreperson

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

NICHOLAS K. PEONE
HYUNGJOO HAN
TRIAL ATTORNEYS
(202) 923-7818